### Harvey Hubert v. The State.

#### No. 4592. Decided October 10, 1917.

**1.—Murder—Death Penalty—Sufficiency of Evidence.**

Where, upon trial of murder, the evidence, although conflicting, was sufficient to sustain the conviction assessing the death penalty, there was no reversible error.

**2.—Same—Special Venire—Jury and Jury Law.**

Where, upon trial of murder, defendant complained of the service of the special venire and filed a motion to quash the same, which the court overruled, and the record on appeal showed that the court below conformed to the law and that no juror was forced upon the defendant and that the defendant did not exhaust his challenges, there was no reversible error.

**3.—Same—Verdict—Misconduct of Jury.**

Where defendant sought to have the trial court to investigate from the jurors how and why they assessed the death penalty, and the court after such investigation overruled the motion for new trial, and no improper action by the jury was shown, there was no reversible error.

Appeal from the Criminal District Court of Travis. Tried below before the Hon. Geo. Calhoun.

Appeal from a conviction of murder; penalty, death.

The homicide occurred on Halloween night in the City of Austin, Texas, while the deceased, Randolph Clark, was indulging with a crowd of other boys in Halloween pranks. The evidence is very voluminous but the salient facts, pro and con, can be gleaned from the testimony of the State's witness Joe St. John and the testimony of the defendant.

The State's witness Joe St. John, among other things, testified that the deceased was at witness' store about 9:30 that night with about eight other boys; that witness knew deceased and most of the boys with him; that when these boys left the store it was about thirty-five minutes

before witness saw deceased again on the corner of Sixth and Waller Streets in company with these same boys; that witness heard some noise on the opposite corner of the street from the witness, where these boys were making a racket; that the witness saw the boys over there as they were starting across the street, when a negro woman yelled at them and told them not to come any further and commenced throwing rocks, when two or three of the boys threw rocks back at her, and by that time the witness had gotten there and stopped them.

The witness and the boys went east about a block, and while there the witness saw these same four negroes cross the street and commenced throwing rocks at witness and the boys again; that the witness saw the defendant go across the street towards these boys and the witness and stepped on the sidewalk; that the witness had been hit by some of the rocks on the knee and could not walk; that the deceased came up to witness and assisted him to a couple of telephone poles nearby; that the other boys scattered and hid out; that the defendant came rapidly towards witness and deceased, saying, "Good evening," and about three minutes thereafter the defendant addressed the deceased, saying, "God damn it, what are they doing to you?" At that time the deceased was throwing rocks across the street at these negroes, and that when the defendant said that as above stated he stuck a knife into the deceased; that the negroes were throwing rocks at witness and deceased at that time and the latter threw a couple of times at them, and apparently had no more rocks and had run back for more, and about that time was grabbed by the defendant from the back and stuck with a knife; that the defendant and deceased were about eight feet away from him when the deceased was stabbed; that the deceased got away from the defendant then and ran about ten or twelve steps when defendant caught him, the witness yelling to him not to cut him any more, and the defendant then turned him loose; that deceased was not doing anything to the defendant at the time he was stabbed; that the deceased was a mere boy of about sixteen or seventeen and that he wore short knee trousers; it was also shown that the deceased died of this stab wound.

The defendant testified substantially that when he got to a certain drug store on the night of the homicide a gang of boys popped up and began chunking rocks; that the defendant whirled and ran and was struck by one of the rocks in the back and ran into a little restaurant; that he stood there a few minutes and then went into the restaurant and took a seat and he heard somebody say, "God damn you. Do not come across here." When defendant looked out of the door he saw these boys ganged up close by across the street; that defendant jumped up, went to the back end of the restaurant, but did not know how to get out; he then turned and saw a knife on the counter, which he picked up as he passed, and as he got to the door did not see anybody, except four or five men standing on the sidewalk, who were men from the country and not in the gang; that he walked on by and heard the woman's

voice, when she said, "Don't you come across here." He heard this when he was waiting in the restaurant; that he called this woman but she did not answer as he started out of the restaurant; and as he walked along, this boy ran up behind him and said, "Dad said to bring his knife back," and the defendant replied he needed it for his protection, and after passing a lot of the boys and as he was about to pass the State's witness St. John and the deceased, the latter says, "There goes one there now," and threw a rock, whereupon defendant turned and said, "What have I done to you? What do you mean?" and at that time deceased motioned and defendant ducked, but deceased hit him right on the shoulder, and then reached down on the ground, grabbing another rock, and was about to throw it when defendant struck him with his knife and walked off, etc. The court charged on murder, manslaughter and self-defense.

*Warren W. Moore, W. J. Crider,* and *Jno. R. Cox,* for appellant.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of special venire: Charles v. State, 13 Texas Crim. App., 658; Taylor v. State, 14 Texas Crim. App., 340; Parker v. State, 33 Texas Crim. Rep., 111.

PRENDERGAST, JUDGE.—Appellant was convicted of the murder of a small seventeen-year-old boy still wearing knee pants and his punishment assessed at death.

He contends the evidence did not justify the infliction of the death penalty. We have carefully read and studied the testimony. Appellant's contention can not be sustained. The evidence was amply sufficient to sustain the verdict and the penalty. We can see no useful purpose to be served in reciting the testimony. He was twice tried in the District Court. Both juries assessed the death penalty.

The court below ordered a special venire of 150 jurors. The officers, as prescribed by law, drew from the wheel this number and the writ was issued to summon them. The sheriff succeeded in serving only ninety-two of them. Because of this appellant made a motion to quash the venire, which was overruled. In approving the bill on this subject the court did so with this qualification: "There was ninety-two jurors summoned; and those not summoned were returned by the sheriff as being out of the county or not found after due diligent search and inquiry. No jurors were excused by the court before the case was called for trial, and the court only excused those from the special venire, after the case was called for trial, who had legal exemptions under the law, the balance of the jurors excused were excused by consent of the parties. No juror was forced upon the defendant, nor did defendant exhaust his challenge. The original venire was drawn from the jury wheel in a manner provided by law." This bill presents no error.

Appellant, in his motion for new trial, did not attack the verdict of the jury for anything that would have invalidated it, but sought to

have the court to investigate from the jurors how and why they had assessed the death penalty. Notwithstanding the court properly held there was no such attack of the verdict of the jury as to require him to make any such investigation, because the death penalty had been assessed, he permitted the appellant to introduce the jurors and others to testify on the subject. None of the testimony in the slightest way tended to show any improper action by the jury.

As stated, we have carefully read this record. Without doubt it shows that appellant had a fair and impartial trial in every particular. The evidence was amply sufficient to sustain the verdict. We can not do otherwise than affirm the judgment, which is hereby ordered.

*Affirmed.*